IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

MARION ANTHONY NORWOOD,      )
                            )
                Movant,      )
                            )
v.                          )        Case No. 18-0832-CV-W-BP
                            )        Crim. No. 13-00390-01-CR-W-BP
UNITED STATES OF AMERICA,     )
                            )
                Defendant.   )

## ORDER AND OPINION (1) DENYING MOTION TO
## VACATE, SET ASIDE OR CORRECT SENTENCE,
## (2) DENYING MOTIONS FOR HEARING,
## AND DENYING A CERTIFICATE OF APPEALABILITY

Pending is Marion Norwood's Motion to Vacate, Set Aside or Correct Sentence, (Doc. 1),

which seeks relief pursuant to 28 U.S.C. § 2255.  For the following reasons, the Motion is

**DENIED**, and the Court declines to grant a Certificate of Appealability.

## I.  BACKGROUND

The Court will summarize the facts and the procedural history, but will not set forth all of

the evidence introduced at trial.  Details will be provided as necessary to discuss Movant's claims.

Additional facts will be set forth in the context of some of Movant's claims.

## A.  Pretrial and Trial

Movant was charged with one count of conspiracy to commit bank fraud.  The Indictment

states the conspiracy began "at least as early as December 10, 2012" and continued "to at least on

or about January 4, 2013."  (Crim. Doc., ¶ 1.)[1]  He was represented by appointed counsel during

the pretrial process and at trial.  Shortly after counsel was appointed a Magistrate Judge conducted

---

[1] "Crim. Doc. ___" is a reference to a document in the criminal case.  "Doc. ___" is a reference to a document in the postconviction proceeding.

a scheduling conference, and Scheduling and Trial Order was issued after the conference.  The order reflects that "during the conference defense counsel requested all discovery to which defendant may be entitled pursuant to the Federal Rules of Criminal Procedure, the Federal Rules of Evidence and the United States Constitution." (Crim. Doc. 15, p. 2.)[2]  Part III of the order set forth categories of information that the Government was to produce.  (Crim. Doc. 15, pp. 3-4.)

During the trial, multiple witnesses discussed the conspiracy's operations.  First, conspirators stole mail from business parks to obtain the businesses' checks.  Some members of the conspiracy (referred to by some witnesses as "printers") used those checks to create counterfeit checks.  Other conspirators (referred to by some witnesses as "drivers", "handlers", or "recruiters") recruited homeless individuals to cash the checks in exchange for a fee.  The drivers texted the names of the homeless men to the printers so that the printers could print counterfeit checks payable to the homeless men.  The drivers also helped the homeless recruits obtain a state ID card (so that they could cash the counterfeit checks), housed them in a hotel or motel, got them a shower, clothing, and food, and drove them to the banks so they could cash the checks.  In this way, the homeless men never saw the printers.  In addition, few of the drivers ever actually saw the printers; often, the drivers would communicate with the printers via texts or through intermediaries.  Most (if not all) of the conspirators traveled from Atlanta to Kansas City, and multiple "crews" (each headed by one or more printers) were operating in the Kansas City area (and elsewhere in the United States) at various times.  The crews would travel from Atlanta to their destination cities, operate for a short period of time, and then return to Atlanta.  Drivers were not permanently "assigned" to a particular crew; thus, a driver might be working with one printer for a period of time and work with another printer at another time, or with multiple printers at a time.

---

[2] Unless otherwise indicated, all page numbers are those generated by the Court's CM/ECF system.

Evidence presented to the jury included testimony regarding the arrest of Markus Bryant and Anthony Lowe on January 31, 2013, in Leawood, Kansas. They were arrested in connection with a homeless individual's attempt to pass a counterfeit check at a bank. Their car was searched, and a cellphone was found. Forensic analysis of the phone revealed exchanges with Movant regarding the printing of checks.[3] In addition, the phone's software automatically recorded the location of pictures taken with the phone. Those coordinates (as well as the content of some of the pictures themselves) confirmed that the phone was in Kansas City, Missouri (or a suburb of Kansas City) at times relevant to the case, including when texts were sent to or received from Movant regarding matters related to the creation and passing of counterfeit checks.

Bryant testified that he was brought into the scheme by Lowe to work with Lowe as an additional driver, and that on at least some of their trips to Kansas City Movant was the printer for their crew. He also testified about the involvement of others, including Truly Matthews, Norman Weaver, Preston West, and Gary Merritt; Matthews and Weaver were printers, and West and Merritt orchestrated the crews (by scouting locations to find homeless men, obtaining check stock and other supplies, and occasionally acting as a go-between by transporting checks or money to and from printers and drivers). Bryant explained that he and Lowe used the cellphone found in his car over the course of several different trips to Kansas City to communicate with Movant, Matthews and Bryant to supply the names to be put on the counterfeit checks and to exchange other information in connection with the cashing of the counterfeit checks.

---

[3] These texts were sent to a person named "Wee Wee." Other evidence established that Movant was "Wee Wee." Some witnesses connecting Movant to the conspiracy only knew him as, and referred to him as, Wee Wee. And, there was other evidence connecting Movant to "Wee Wee's" cellphone once it was found, including (1) Movant paid the bill and (2) the account was registered to "Demarion Norwood," and the drivers license for "Demarion Norwood" had Movant's picture on it.

Lowe testified that West brought him into the conspiracy in the beginning of 2012, that he was initially a driver with West, and that in his time with the conspiracy he met Movant. Specifically, he met Movant in late 2012, and Lowe agreed to go to Kansas City with Merritt, Bryant, and Movant.

Merritt testified that Movant personally brought him into the conspiracy in or before 2010. In addition to testifying how the counterfeiting scheme worked, Merritt testified that he observed Movant making counterfeit checks and that Movant made the decisions as to what cities the crew would go to. Finally, Merritt and Matthews were arrested on February 1, 2013 as they were leaving town (because of the arrest of Bryant and Lowe); equipment to counterfeit checks (such as a printer, a laptop, a check writing program, and check stock) was found in the car, and Merritt testified that it belonged to Movant. Some copies of counterfeit checks (i.e., not on check stock) were also recovered.

The jury found Movant guilty of conspiracy to commit bank fraud.

### B.  Post-Trial

After the trial, the Court granted Movant's request to represent himself at sentencing and appointed his trial counsel to serve as standby counsel. (Crim. Doc. 99.) The Court ordered that Movant be given access to all of the discovery in the case (but not the trial transcript, because a transcript had not been ordered or prepared). Thereafter, Movant filed multiple motions to obtain additional information, some of which were granted. One such motion requested a transcript of the grand jury testimony provided by Steven Ryan of the Postal Inspector's Office. The Court deferred ruling on this request and directed the Government to indicate whether Inspector Ryan testified in front of the grand jury. (Crim. Doc. 123, p. 2.) The Government reported that he had and "acknowledge[d] that the government should have produced the grand jury transcript in this

case as Jencks Act material, 18 U.S.C. § 3500, since Postal Inspector Ryan was to be called as a government witness at trial." (Crim Doc. 129, p. 1.) The Government further represented that in response to the Court's inquiry it had provided a transcript of the testimony to standby counsel.

The Court ordered that the Inspector Ryan's grand jury testimony be submitted for *in camera* review so that it could conduct a *sua sponte* determination whether the Jencks Act had been violated. (Crim. Doc. 131.) After conducting its review, the Court concluded that any violation was harmless because there was no substantial or significant difference between Inspector Ryan's grand jury testimony and his testimony at trial. (Crim. Doc. 132.)

Movant objected to practically the entire Presentence Investigation Report, ("PSR") including particularly the provisions regarding the dates of the conspiracy, the dates of his involvement in the conspiracy, the amount of loss and the number of victims. The sentencing hearing took place over the course of two days: September 30 and October 5, 2015. At the end of the hearing on October 5, the Court orally announced its conclusions relevant to the sentencing guidelines and the sentence (of 144 months) and advised that after the hearing it would issue an Order detailing the Court's findings that resulted in the announced conclusions regarding the loss amount and the number of victims. That Order was issued on October 7, 2015. (Crim. Doc. 185.)

### C. Appeal

Movant filed a Notice of Appeal; the Case Number in the Eighth Circuit was 15-3442. Over Movant's objection, the Eighth Circuit appointed Movant's trial counsel to represent him on appeal. On January 29, 2016, counsel filed a motion to withdraw. The motion is sealed, but Movant represents that counsel reported that he had a potential conflict of interest. The Eighth Circuit denied the motion to withdraw on February 17, 2016; the order is also sealed.

Counsel filed a brief and another motion to withdraw, this time pursuant to *Anders v. California,* 386 U.S. 738 (1967).  The *Anders* brief discussed the following issues:

1. sufficiency of the evidence,

2. denial of motions in limine regarding evidence outside the periods charged in the Indictment,

3. erroneous calculations of loss amount and the number of victims,

4. improper application of enhancements for use of sophisticated means, unlawful use of means of identification, and for being an organizer/leader, and

5. the overall reasonableness of the sentence.

Movant was given leave to file a supplemental brief.  He argued that the Court erred:

1. by failing to recuse because she served as the United States Attorney when the investigation into the conspiracy began,

2. by relying on Lowe's and Merritt's testimony to make findings related to sentencing,

3. by failing to make sufficient findings that Movant was responsible for relevant conduct (particularly victims and losses) occurring outside the time frame contained in the Indictment,

4. by failing to rectify a conflict of interest between Movant and counsel based on counsel's representation of "Mr. Carter,"

5. because the Government failed to prove the elements of the crime beyond a reasonable doubt,

6. in calculating the amount of loss,

7. by failing to require proper authentication of the Government's exhibits,

8. by failing to provide certain documents prior to sentencing, and

9. by failing to make sufficient findings regarding Movant's alleged connection to some of the relevant conduct that factored into the Sentencing Guideline calculations.

The Court of Appeals directed the Government to respond to the first issue raised in Movant's pro se brief.

The Eighth Circuit affirmed the conviction and sentence. *United States v. Norwood,* 854 F.3d 469 (8th Cir.) (per curiam), *cert. denied,* 136 S. Ct. 366 (2017). After summarizing the nature of the conspiracy and the evidence, the court stated "that the evidence was sufficient to sustain the jury's verdict, and . . . evidence about past events was properly admitted under Federal Rule of Evidence 404(b)." *Norwood,* 854 F.3d at 471. The court next noted that the Government's investigation into Movant's involvement in the conspiracy did not begin until after January 2013 – after the undersigned resigned as United States Attorney. *Id.* at 471. The court held that the undersigned was not required to recuse because "while U.S. Attorney [she] had no significant personal involvement in a critical decision regarding [Movant's] subsequent prosecution for mail fraud conspiracy." *Id.* at 472. Finally, the court noted the many sentencing issues that had been raised and held "that the district court properly applied the Guidelines and made no clearly erroneous factual finding." *Id.* It also concluded that the sentence was not unreasonable. *Id.* The opinion concludes by observing that after reviewing the Record as required by *Penson v. Ohio,* 488 U.S. 75 (1988), there were no other nonfrivolous issues; the judgment and conviction were affirmed and counsel was granted leave to withdraw. *Id.*

### D. Post Conviction Proceedings

Movant's initial Motion raised thirty-two grounds for relief. (Doc. 1.) He then filed a Supplement that raised three additional grounds for relief. (Doc. 4.) Later, he filed a Second Supplement. (Doc. 10.) The Second Supplement does not add new grounds for relief; instead, it

amends or supplements some of the previously-asserted grounds for relief. The Court directed the Government to respond to the issues raised in these three filings. (Doc. 11.)[4] The Government did so, (Doc. 19),[5] and Movant has filed his Reply Suggestions, (Doc. 31).

Movant has also filed two motions requesting that the Court hold a hearing on his motion. A petitioner "is entitled to an evidentiary hearing unless the motion and the files and the records of the case conclusively show that he is entitled to no relief." *Witthar v. United States,* 793 F.3d 920, 922 (8th Cir. 2015) (cleaned up); *see also Anjulo-Lopez v. United States,* 541 F.3d 814, 817 (8th Cir. 2008). All of Movant's claims for relief can be resolved based on the Record and the law; none of his claims depend on disputed issues of fact. Therefore, his motions requesting an evidentiary hearing, (Doc. 32 and Doc. 35) are denied.[6]

## II. DISCUSSION

Movant's claims all allege that his attorney provided ineffective assistance at trial or on appeal. Such claims are evaluated under the standards set forth in *Strickland v. Washington,* 466 U.S. 668 (1984), which requires the movant to "show that his lawyer's performance fell below the minimum standards of professional competence (deficient performance) and that there is a reasonable probability that the result of the proceedings would have been different if his lawyer had performed competently (prejudice)." *Hamberg v. United States,* 675 F.3d 1170, 1172 (8th Cir. 2012) (quotation omitted).

---

[4] Thereafter, Movant twice requested permission to further supplement his pleadings. Both requests were denied. (Doc. 13; Doc. 22.)

[5] The Government (correctly) characterizes Movant's claims as "repetitive and overlapping," (Doc. 19, p. 1), and for that reason grouped them into categories and addressed many of them collectively. This approach by the Government is understandable. Nonetheless, to ensure that each claim is addressed, the Court will address each of Movant's claims individually.

[6] Movant's discovery-related motions, (Doc. 37 and Doc. 38), are also denied. These motions seek to re-examine all of the evidence developed during the Government's investigation and depose some of the witnesses. Essentially, Movant seeks to retry the case. This is not a valid purpose for a § 2255 motion.

With respect to the performance prong, there is a "strong presumption that counsel's conduct falls within the wide range of professional assistance," *Charboneau v. United States,* 702 F.3d 1132, 1136 (8th Cir. 2013) (quotation omitted), so the Court's scrutiny of counsel's performance must be deferential. *E.g., Hamberg,* 675 F.3d at 1172. The Court's scrutiny is even more deferential with respect to the performance of appellate counsel because appellate counsel is expected to "winnow[ ] out weaker arguments on appeal." *Charboneau,* 702 F.3d at 1136-37. The prejudice prong's requirement of a "reasonable probability" of a different outcome means there must be a "substantial, not just conceivable, likelihood of a different result. *Cullen v. Pinholster,* 563 U.S. 170, 189 (2011). "A court need not address both prongs of the *Strickland* test if the petitioner cannot meet one of them." *Garcia v. United States,* 679 F.3d 1013, 1014 (8th Cir. 2012)

### A.

Movant's first claim as originally phrased appeared to present several different arguments. Movant refined the first claim in his Second Supplement. (Doc. 10, pp. 1-2.) He alleges that he received ineffective assistance on appeal because his appellate counsel had a conflict of interest, as reflected in the Sealed Motion to Withdraw that counsel filed with the Court of Appeals. However, the Court of Appeals clearly did not believe that there was a conflict of interest; otherwise, when presented with the issue the Court of Appeals would have granted the motion to withdraw. The Court cannot conclude that a conflict of interest existed if the Court of Appeals already determined otherwise.

Despite the Second Supplement's refinement of the first claim, Movant's Reply Suggestions discuss additional issues. He contends that counsel was ineffective for failing to review the case file to ensure that the Government produced all exculpatory information. However, he identifies no information that was not disclosed; instead, he speculates that certain

information may have existed and then further speculates that such information may have proved to be exculpatory. (Doc. 31, pp. 4-8.) These contentions fail to present any grounds for concluding that counsel's performance violated the performance prong.

To the extent that Movant is referring to the Government's failure to provide a transcript of Inspector Ryan's testimony before trial, the claim must be rejected. The Government's failure to provide information required by the Jencks Act is harmless if there is no substantial or significant difference between the witness's grand jury testimony and his testimony at trial. *E.g., United States v. New,* 491 F.3d 369, 376 (8th Cir. 2007); *United States v. Manfre,* 368 F.3d 832, 8843 (8th Cir. 2004); *United States v. Anthony,* 565 F.2d 533, 537 (8th Cir. 1977). Movant has not argued, much less demonstrated, that he was prejudiced by the Government's failure to produce Inspector Ryan's testimony. Therefore, counsel did not act unreasonably by failing to raise the issue on appeal, and Movant was not prejudiced.

**B.**

In his Second Supplement, Movant asked to withdraw this claim. (Doc. 10, p. 2.) Therefore, the Court will not address it.

**C.**

Movant contends that counsel was ineffective both at trial and on appeal for failing to raise a claim of prosecutorial misconduct because the Government utilized perjured testimony at trial. This claim would have required proof that "(1) the prosecution used perjured testimony; (2) the prosecution knew or should have known of the perjury; and (3) there is a reasonable likelihood that the perjured testimony could have affected the jury's judgment." *United States v. Martin,* 59 F.3d 767, 770 (8th Cir. 1995). However, simple inconsistencies in the evidence do not demonstrate that perjury occurred. *E.g., id.*

Movant contends that Merritt testified that he became involved with the conspiracy in November 2012, which was false because he had prior arrests for check fraud in the early 1990s and had dealings with Bryant before November 2012. He also contends that Merritt understated Matthews' role in the conspiracy. A review of the Trial Transcript reveals that Merritt was initially asked about his involvement in activities related to counterfeit checks in Kansas City but not to his prior criminal activity. (*E.g.,* Crim. Doc. 209, p. 65 (Trial Tr., p. 190).) There is no indication that this conspiracy existed in the early 1990s, much less any indication that Merritt's testimony that he became involved in *this* conspiracy in November 2012 was false.[7] With respect to Matthews, Merritt testified that he was involved in the conspiracy but that to his knowledge Matthews did not print checks – and nothing suggests that Merritt had such knowledge. (Crim. Doc. 209, p. 74 (Trial Tr., p. 199).)

The Court concludes that neither of *Strickland*'s prongs has been satisfied. Movant has not identified any of Merritt's testimony that was perjured. In addition, even if the Court characterized the supposed differences between Merritt's testimony and other evidence as "perjury," the issues are so trivial that there is no likelihood that the trial's outcome would have been different. Accordingly, Movant is not entitled to relief on this ground.

### D.

Movant's fourth claim alleges that counsel provide ineffective assistance by failing to obtain an independent forensic evaluation of the phones and computers recovered during the investigation. (Doc. 1, p. 16 (alleging that counsel "unreasonably failed to consult and/or use an independent expert); *see also* Doc. 1, p. 18.) In his Reply Suggestions, however, Movant insists

---

[7] To the extent that it is relevant to this issue, the Court notes that the jury was told about Merritt's prior convictions because they constituted impeachment. (Crim. Doc. 209, p. 76 (Trial Tr., p. 76).)

that this is not his claim, and that he is actually claiming that counsel did not properly impeach witnesses. (Doc. 31, p. 17.)

Movant does not describe any information that could have been used to impeach witnesses. He also does not indicate what information a forensic examination of the phones and computers would have revealed, so there is no basis for concluding that such an examination would have altered the outcome in this case. "A claim of ineffective assistance based on the failure to consult and call an expert requires evidence of what a scientific expert would have stated at trial in order to establish Strickland prejudice." *Rodela-Aguilar v. United States,* 596 F.3d 457, 462 (8th Cir. 2010) (quotation omitted). A similar requirement exists generally for claims of ineffective assistance based on the failure to call a witness. *E.g., Armstrong v. Kemna,* 534 F.3d 857, 867-68 (8th Cir. 2008). Movant merely identifies testing that he believes could have been conducted; he does not identify what the expected results of that testing would have been or why those results would have created a reasonable probability that the outcome would have been different. To the extent that Movant specifically identifies potentially impeaching information (which consists largely of inconsistent statements between witnesses), the Record reflects that these inconsistencies were presented to the jury.[8] Neither of *Strickland*'s prongs were violated.

**E.**

---

[8] One exception is Movant's insistence that he was in Atlanta for a meeting with his probation officer on January 31, 2013, and therefore was not in Kansas City. Even if this is true, nobody definitively stated that he was in Kansas City on that date. Merritt testified that he believed Movant left Kansas City on January 31 after learning of Bryant's and Lowe's arrest, (Crim. Doc. 209, pp. 75-76 (Trial, Tr., pp. 200-01)), but he did not definitively say that Movant was in Kansas City on January 31. Presenting evidence that Movant was in Atlanta on January 31 would have had no effect on the proceedings.

For the most part, Movant's fifth ground for relief is essentially the same as his fourth ground for relief. He also contends that counsel did not interview witnesses, review the evidence, or review jailhouse phone calls made by other witnesses. (Doc. 10, pp. 2-3.) However, in this claim he does not identify any witnesses who were not interviewed, nor does he identify how these supposed failings satisfy *Strickland*'s prejudice prong.

**F.**

Movant contends counsel was ineffective for failing to interview Matthews, Merritt, Lowe, the Government's forensic expert, Howard Youngblood, or Benetta Walker. This claim must be rejected for a variety of reasons.

Matthews, Merritt, and Lowe were represented by counsel because they were facing sentencing on criminal charges, and Movant's counsel did not have free reign to interview them. Movant does not provide any basis to believe that they would have agreed to be interviewed. He also does not identify any information that could have been obtained that would have been helpful to his case. Thus, neither of *Strickland*'s prongs are satisfied.

Similarly, counsel did not have the ability to interview the Government's forensic expert. The Federal Rules of Criminal Procedure do not permit formal discovery (such as a deposition), and there is no indication that the Government would have allowed its expert to be interviewed informally. The expert's report was made available to counsel.

According to the Superseding Indictment in a separate case charging (among others) Weaver and West, Youngblood was a homeless individual recruited to pass counterfeit checks. Movant speculates that Youngblood could have testified that he saw Bryant and Lowe print checks in their car, (Doc. 31, p. 26), but he provides no basis for concluding that Youngblood could have,

or would have, testified in this manner.  And, even if he had, this would not have affected the trial's outcome.

Finally, Movant contends that Ms. Walker could have testified about his whereabouts in late December 2012.  Movant does not explain who Ms. Walker is, and the Court cannot find any reference to her.  Regardless, Movant does not indicate what Ms. Walker would have said, or that she was willing to testify.  Therefore, the Court has no basis for concluding that she would have provided exculpatory testimony.

## **G.**

Prior to trial, counsel filed a Motion in Limine to exclude evidence of acts that occurred outside the time frame specified in the Indictment.  The motion was overruled, and Movant clams that the motion was overruled because the Court deemed it inadequately raised the issue.  He argues his attorney was ineffective for preparing an inadequate Motion in Limine.  Movant's argument is rejected for at least two reasons.  First, his characterization of the events at trial is not correct; the Court did not decline to consider the evidentiary objection because of a supposed inadequacy in the Motion in Limine.  (*See* Crim. Doc. 208, pp. 10-18 (Trial Tr., pp. 10-18).)  The issue was presented to and considered by the Court, and counsel's performance was not deficient.  Second, the Court of Appeals specifically affirmed the admission of this evidence, so there was no prejudice

## **H.**

Movant's eighth claim repeats arguments addressed in Subsections D, E, and F, above, and the Court's ruling is the same.

## I.

Movant contends that his attorney was ineffective on appeal for failing to argue that the Court erred in relying on Merritt's testimony at sentencing. He characterizes the Court as relying "solely" on Merritt's testimony, (Doc. 1, p. 42), which is not accurate. (*See* Doc. 202, p. 91 (stating that Court made its findings regarding the scope of Movant's involvement in the conspiracy "in part" on Merritt's trial testimony).) He also argues that Merritt was not a credible witness, but in assessing which claims to present competent appellate counsel can reasonably conclude that a challenge to a witness's credibility should not be presented. Finally, and most importantly, in their briefs on appeal both counsel and Movant presented arguments related to the Court's findings at sentencing that encompassed this argument. In fact, the second ground asserted in Movant's brief specifically contended that the Court erred by relying on Merritt's (and Lowe's) "untrustworthy and unreliable" testimony. And, the Eighth Circuit affirmed the Court's findings. *Norwood,* 854 F.3d at 472. For these reasons the Court rejects this claim.

## J.

In July 2013, in Butts County, Georgia, Movant was a passenger in a rental car driven by "John Latimore."[9] The car was stopped by a deputy from the Butts County Sheriff's Office. The deputy testified that the car was stopped for failing to stay in its lane and traveling so slowly that it was impeding traffic. (Doc. 212, p. 46 (Trial Tr., p. 376).) While the driver identified himself to the deputy as John Latimore, the paperwork indicated that the car was not rented by John Latimore. (Doc. 212, pp. 52-53 (Trial Tr., pp. 382-83).) The deputy eventually decided to search the car for a variety of reasons, including: the rental paperwork was not in Latimore's name, the

---

[9] This was not the driver's real name, but it is the name he gave to the deputy. The deputy testified that this was not the driver's real name, but it is not clear when the deputy learned this fact. The driver's real name is not in the Record, so the Court will refer to him as "Latimore."

rental the paperwork indicated that the rental's term had expired, Latimore was unable to provide Movant's name despite declaring that he knew him for twenty years, and the deputy detected the smell of marijuana.  (Doc. 212, pp 54-55 (Trial Tr., pp. 384-85).)  The deputy found two duffel bags in the trunk; Latimore claimed one and Movant claimed the other.  (Doc. 212, pp. 56-57 (Trial Tr., pp. 386-87).)  Inside Movant's bag the deputy found manila envelopes containing check stock and stolen business checks.  (Doc. 212, pp. 57-58 (Trial Tr., pp. 387-88).)  This testimony, along with the dashcam video from the deputy's car, were admitted into evidence.

Movant contends that his attorney provided ineffective assistance by failing to file a motion to suppress.  He does not contend that the deputy lacked probable cause to search for drugs; instead, his theory is that the deputy was looking for drugs and not checks, and so could not open the envelopes.  (Doc. 1, p. 50.)  He further explains his theory in his Reply Suggestions, where he alleges that the deputy needed "independent probable cause to search for evidence of a check fraud offense."  (Doc. 31, p. 52.)

Movant's legal theory is incorrect, and counsel was not ineffective for failing to present it. Given (as Movant tacitly concedes) that the deputy had probable cause to search the car for drugs, the deputy was authorized to search anywhere in the car that drugs might be found.  This also meant that the deputy could open containers where drugs might be found.  *E.g., United States v. Winters,* 221 F.3d 1039, 1042 (8th Cir. 2000) (officer's smell of marijuana "created probable cause to search the car and its containers for drugs"); *see also California v. Acevedo,* 500 U.S. 565 (1991).  A motion to suppress would not have been meritorious, and counsel's failure to file such a motion did not violate either of *Strickland*'s prongs.

**K.**

Movant argues that counsel was ineffective for failing to object to two Jury Instructions: Instructions 19 and 23. Instruction No. 19 was the Verdict Director and set forth the elements of the crime. (Doc. 72, p. 25.) Instruction No. 23 merely stated that it was not "necessary for the Government to prove that the conspirators actually succeeded in accomplishing their unlawful plan." (Doc. 72, p. 34.)

Movant does not specify any error with respect to Instruction No. 23. His argument focuses on the first two elements of the crime as set forth in Instruction No. 19. The first element tracked the language of the Indictment and told the jury that it had to find that "beginning at least as early as December 10, 2012 and continuing to at least on or about January 4, 2013, two or more persons, including [Movant], reached an understanding or came to an understanding to commit Bank Fraud." The second element required that Movant "voluntarily and intentionally joined in the agreement or understanding, either at the time it was first reached or at some later time while it was still in effect." Movant argues that a special interrogatory was required so that the jury could determine exactly when Movant became involved in the conspiracy. However, there was no basis for an objection because the time frame is not an essential element of the crime of conspiracy, *e.g., United States v. Ghant,* 339 F.3d 660, 662 (8th Cir. 2003), so the jury did not have to unanimously agree on the date(s) Movant was involved in the conspiracy. An objection on this ground would have had no basis in law, and the outcome of the trial was not affected by counsel's failure to make it.

**L.**

This claim is similar to the previous one regarding the verdict director. Movant makes the same argument with respect to the Verdict Form, contending that counsel was ineffective for

failing to object to the use of a general verdict form instead of a special verdict form. For the reasons stated previously, Movant's argument is rejected.

## M.

Movant argues that counsel was ineffective for failing to argue on appeal that the Government took inconsistent positions. Specifically, he points to the fact that the Indictment charges that the conspiracy began as early as December 10, 2012 and continued to at least January 4, 2013, yet at sentencing the Government sought to hold Movant accountable for relevant conduct that occurred before December 10, 2012 and after January 4, 2013. (Doc. 1, p. 60.) Counsel's failure to raise the issue was not ineffective assistance. First, the Government's positions were not inconsistent; for instance, there is nothing inconsistent about (1) the Indictment stating that the conspiracy began as early as December 10, 2012 and (2) the Government arguing at sentencing that the conspiracy began before December 10, 2012. Second, as stated in the preceding subsection, the dates of a conspiracy are not elements of the crime, so the jury's verdict did not constitute a determination that Movant's involvement occurred no earlier than December 10 and no later than January 4. Finally, as stated earlier on direct appeal the Eighth Circuit affirmed the Court's guideline calculations.

## N.

This claim repeats Movant's prior claims regarding counsel's alleged failure to obtain evidence that could have been used for impeachment (as discussed in Subsection D). There is no reason for the Court to address these matters again.

## O.

Movant contends that on appeal counsel should have raised an issue regarding the Government's failure to provide evidence, but he does not specify the evidence that he believes

the Government failed to turn over. To the extent that Movant is referring to the Government's failure to provide a transcript of Inspector Ryan's testimony, the Court addressed this issue in Subsection A.

Within this point, Movant also contends that counsel was ineffective for agreeing to a condition on his receipt of the Government's evidence in this case. Specifically, counsel agreed not to provide copies to Movant that he could keep. Counsel's agreement did not preclude him from showing Movant the evidence when they met to discuss the case or from discussing the evidence with him; counsel's agreement simply meant that Movant could not have copies to keep while he was in custody pending trial. This is a common restriction and counsel did not provide deficient representation by agreeing to it. Moreover, Movant has not demonstrated any likelihood that the outcome of the proceedings would have been different if he had copies of the evidence in his cell prior to trial.

## **P.**

This ground asserts (again) that counsel should have raised arguments on appeal regarding the Court's reliance on Merritt's testimony at sentencing. The Court has previously addressed this issue, (*see* Subsections C, F, and I), and there is no need for further discussion.

## **Q.**

Movant contends that counsel was ineffective on appeal for failing to challenge the Court's conclusions that certain conduct of co-conspirators was foreseeable to Movant. In large measure, this argument reiterates Movant's prior arguments regarding Merritt's credibility, which have already been addressed. In particular, this issue was effectively raised in Movant's pro se Brief, so the issue was before (and rejected by) the Court of Appeals.

**R.**

In another argument related to the Court's factual findings at sentencing, Movant contends that counsel should have argued on appeal that the Court failed to make "individualized factual finding[s]" to resolve the factual disputes. The Record reflects that the Court resolved the issues relevant to the Sentencing Guidelines. There is no requirement that the Court explain in minute detail how it arrived at each of its conclusions. Obviously, there was sufficient detail to permit the Court of Appeals to hold that "the district court properly applied the Guidelines and made no clearly erroneous factual finding." *Norwood,* 854 F.3d at 472. Therefore, Movant was not prejudiced by counsel's failure to raise this argument on appeal.

**S.**

Movant argues that counsel should have raised an issue challenging whether the Government proved that there were forty-nine victims (as ultimately found by the Court). To the contrary: counsel's *Anders* brief raised this issue, as did Movant's pro se brief. And, the Court of Appeals affirmed this finding. Therefore, the issue was raised and there was no deficient performance.

Within this claim Movant also argues that the people whose mail was stolen should not have been counted as victims because he was not charged with mail theft. However, the forty-nine victims consisted of (1) the banks where the checks were cashed and (2) all bank customers whose accounts had been used to create a counterfeit check. (Crim. Doc. 103, ¶ 13; Crim. Doc. 185.) Therefore, Movant's theory (even if it is correct) has no bearing in this case.

**T.**

Movant contends that counsel was ineffective for failing to challenge the amount of restitution. Arguments regarding the amount of restitution are not cognizable in a § 2255

proceeding. *E.g., United States v. Bernard,* 351 F.3d 360 (8th Cir. 2003). This is so even if the claim is presented in terms of counsel's ineffective assistance. *Shephard v. United States,* 735 F.3d 797 (8th Cir. 2013) (per curiam) (Movant "is not claiming a right to be released from custody, and thus, even if [ ]he could demonstrate that counsel was ineffective, the claim may not be raised in a section 2255 motion."). Therefore, this claim must be rejected.

## U.

This is another claim of counsel's ineffectiveness in failing to raise an argument on appeal about restitution. As explained in the preceding subsection, this claim is not cognizable in a § 2255 proceeding.

## V.

Movant contends that counsel should have appealed because evidence was admitted without a foundation for admission being established. Specifically, he refers to (1) records used to connect him to activities in Florida, (2) records from Platte Valley Bank, and (3) records from other banks. (Doc. 1, p. 92.) However, these exhibits were either admitted without objection (undoubtedly, because counsel realized that a foundation for their admission could easily be laid and there was no sense in delaying the proceedings) or pursuant to a business record certification as permitted by Fed. R. Evid. 902(11). (*See, e.g.,* Crim. Doc. 209, pp. 17-18, 114-20 (Trial Tr., pp. 142-43, 239-45).) Thus, there was no error in admitting the exhibits, and no violation of *Strickland* for failing to raise the issue on appeal.

## W.

At trial, there was testimony that a fingerprint on one of the checks was run through the FBI's Automated Fingerprint Identification System, ("AFIS"), and the fingerprint matched Movant's fingerprint card in AFIS. Movant contends that counsel should have appealed the

Court's decision to admit the fingerprint card over objection, but Movant's contention that there was an objection to this evidence is not entirely accurate. Initially, at Movant's direction, counsel objected to the admission of the fingerprint card absent a proper foundation for its admission. Near the end of the second day of trial, the Government represented that a witness would be arriving to lay the foundation. (Crim. Doc. 209, pp. 194-95 (Trial Tr., pp. 319-20).) Thereafter, both Movant personally and his attorney agreed to stipulate to the admission of the fingerprint card so that the witness would not have to testify. (Crim. Doc. 209, p. 196 (Trial Tr., p. 321).) Therefore, there was no issue to appeal.

## X.

Movant reiterates his seventh argument, contending that counsel should have appealed the Court's decision to admit evidence of other acts. For the reasons previously stated, (*see* Subsection G, *supra*), this claim is rejected.

## Y.

Movant reiterates his prior arguments regarding the Court's factual findings at sentencing, and the Court has sufficiently addressed this issue.

## Z.

In another argument about fingerprints, Movant contends that on appeal counsel should have argued that admission of the fingerprint card denied Movant's Confrontation Clause rights. As explained before in Subsection W, Movant agreed to the admission of this evidence, so counsel was not ineffective for failing to raise the issue.

## AA.

Movant contends that his attorney failed to appeal the lack of proof of his prior criminal convictions, which were necessary to establish his criminal history. However, the Record reflects

that Movant did not make such an objection at sentencing, which meant there was no issue to appeal.

The PSR set forth Movant's prior adult convictions in paragraphs 35 through 54, and the Criminal History Computation was set forth in paragraphs 55 through 57. (*See* Crim. Doc. 103, pp. 12-17.) Movant objected to paragraphs 34 through 49 because their "inclusion [is] highly prejudicial to his sentencing" and asked that those paragraphs be deleted. (Crim. Doc. 103, p. 66.) He objected to paragraph 50, but only to request a one-point reduction because the conviction was fifteen years old. (Crim. Doc. 103, p. 66.) He objected to paragraphs 52, 53 and 54, arguing that the PSR misstated the punishment that was imposed and that those convictions should not contribute to his criminal history score because he was only fined. (Crim. Doc. 103, pp. 66-67.) Thus, Movant never contested the accuracy of the PSR's list of his prior convictions.

At the sentencing hearing, the Court overruled Movant's objection to paragraph 34 through 49. The Court also overruled the objection to paragraph 52 because the crime constituted a felony and sentences for all felony convictions are counted. U.S.S.G. § 4A1.2(c) (2014). The Court overruled Movant's objection to paragraph 53 because it was a conviction for driving under the influence, and such convictions are always counted. U.S.S.G. § 4A1.2 (comment 5) (2014). The objection to paragraph 54 was overruled because Movant did not present any law to support his theory that an offense resulting in a fine should not be counted; at the same time, the Court noted that Movant's Criminal History Category would be the same regardless of the ruling on paragraph 54. (Crim. Doc. 202, p. 101.)

The Record reflects that Movant did not challenge the fact that he was convicted of these felonies – so there was nothing to appeal. To the extent that Movant contends that counsel should have appealed based on the objections that he made, he provides no authority suggesting that there

was any error at sentencing; therefore, Movant cannot demonstrate that counsel's failure to appeal these issues constituted prejudice.

## BB.

Movant contends that on appeal counsel should have challenged the Court's finding that the losses and victims were a result of the conspiracy to which he was a party. This is similar to Movant's other arguments regarding the findings made at sentencing, and the Court rejects it for the reasons previously stated.

## CC.

Movant contends that on appeal counsel should have argued that there was insufficient evidence of loss to the banks. He asserts that the only evidence of losses was Merritt's testimony and the PSR. This is incorrect. (*See* Crim. Docs. 183-85, 202, 204.) Moreover, counsel's *Anders* brief raised an issue regarding the number of victims, and the Court of Appeals affirmed. For these reasons, this argument has no merit.

## DD.

In his thirtieth ground for relief, Movant challenges the quality of counsel's *Anders* brief, characterizing it as arguing for affirmance of his conviction and sentence. This is not an accurate characterization of the brief. Moreover, the Court notes that after reviewing the brief and the Record the Eighth Circuit accepted the brief and permitted counsel to withdraw, signifying that it reviewed the Record and (apart from the issue that it directed the Government to address) found no nonfrivolous issues. *See United States v. Davis,* 508 F.3d 461, 463-64 (8th Cir. 2007) (describing appellate court's role when an *Anders* brief is filed). Therefore, the Court cannot conclude that counsel's *Anders* brief was so deficient that it constituted ineffective assistance.

**EE.**

Movant claims that there was no evidence that the Platte Valley Bank or the Blue Ridge Bank were insured by the FDIC.  He argues that counsel was ineffective for failing to argue for acquittal or raise an issue on appeal based on this failing.  However, the Record reflects that there was evidence that the banks were insured.  (Crim. Doc. 210, p. 17 (Trial Tr., p. 347).) Movant contends that this evidence was insufficient, (Doc. 1, p. 121), but he does not explain why this is so.  More importantly, he is incorrect: while other (and arguably better) evidence may have existed (such as the FDIC Certificates), the testimony was sufficient to satisfy the Government's burden.  Accordingly, counsel was not ineffective for failing to raise this issue.

**FF.**

Movant raises another argument regarding restitution, contending that counsel should have appealed the award because it was based solely on Merritt's testimony.  As explained previously, (*see* Subsection I, *supra*), the Court did not rely solely on Merritt's testimony to resolve sentencing issues.  Also as explained previously, (*see* Subsection T, *supra*), the Eighth Circuit has held that a § 2255 proceeding cannot be used to challenge a restitution award, even if it is couched in terms of counsel's ineffective assistance.

**GG.**

Movant argues that counsel should have argued at both trial and on appeal that the banks were not defrauded.  Movant provides no details and does not contend that there was any failing by counsel with respect to any of the elements of the crime.  Accordingly, the claim is rejected.

**HH.**

Movant argues that counsel should have challenged on appeal the Court's application of a sentencing enhancement for Movant's status as an organizer/leader. However, the issue is presented in counsel's *Anders* brief, and the guideline calculations were affirmed.

**II.**

Finally, Movant argues that counsel provided ineffective assistance on appeal by failing to argue that the undersigned should have recused herself due to her prior service as the United States Attorney. But, to the contrary, counsel did raise the issue in the *Anders* brief. Moreover, the Court of Appeals directed the Government to respond to that issue and ultimately ruled that recusal was not required. Accordingly, neither of *Strickland*'s prongs can be satisfied.

### III.  CERTIFICATE OF APPEALABILITY

In order to appeal Movant must obtain a Certificate of Appealability, which should be issued only if he "has made a substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This showing is established if reasonable jurists could disagree as to how the issue should be resolved. *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003). The Court does not believe that the issues Movant has raised are subject to debate among reasonable jurists, so the Court declines to issue a Certificate of Appealability.

### IV.  CONCLUSION

The Motion for Postconviction Relief is **DENIED** and the Court declines to issue a Certificate of Appealability.

**IT IS SO ORDERED.**

/s/ Beth Phillips
BETH PHILLIPS, CHIEF JUDGE
DATE: August 7, 2019                    UNITED STATES DISTRICT COURT